[Cite as *Cleveland v. Perkins*, 2019-Ohio-3281.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND, :

    Plaintiff-Appellee, :

                       No. 107816

    v. :

CHRISTOPHER R. PERKINS, :

    Defendant-Appellant. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 15, 2019

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2018 CRB 004102

---

### *Appearances:*

Barbara Langhenry, Director of Law, City of Cleveland, Karrie D. Howard, Chief Prosecutor, and Marco A. Tanudra, Assistant City Prosecutor, *for appellee.*

Milton A. Kramer Law Clinic, Carmen Naso and Andrew Geronimo, attorneys, and Matthew Logan O'Connor, certified legal intern, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Christopher R. Perkins ("Perkins"), appeals his petty theft and assault convictions. For the reasons set forth below, we affirm.

{¶ 2} Perkins's convictions arise out of a March 2018 incident when Perkins allegedly struck Lenise Winters ("Winters") in his apartment and kept Winters's car keys. Perkins was charged on March 19, 2018, with unlawful restraint, petty theft, and assault. Perkins waived his right to a jury trial, and in August 2018, the matter proceeded to a bench trial.

{¶ 3} The city of Cleveland's ("City") witnesses included the victim — Winters — and Cleveland Metropolitan Housing Authority ("CMHA") Police Officer Raja Fattah ("Officer Fattah"). Winters testified that she and Perkins had been friends for four and one-half years and in a relationship for three years. Winters lived with Perkins in his apartment. Perkins's girlfriend at the time of trial, Lapeaches Scott ("Scott"), also lived in the apartment for a period of time while Winters lived there as well. Perkins wanted a sexual relationship with both Scott and Winters, but Winters was not interested.

{¶ 4} Winters further testified that at the time of the incident, on March 18, 2018, she and Perkins were still a couple. On that night, there was a dispute between Winters, Perkins, and Scott. According to Winters, March 16, 2018, was the last night she slept in Perkins's apartment. The next day, Perkins told Winters that Scott needed help moving. Perkins did not tell Winters where Scott was moving. At that time, Scott had been sleeping on the couch in Perkins's apartment for about a week.

{¶ 5} On March 17, 2018, Winters spent the night at her daughter's house. She was picked up by the paramedics at her daughter's and taken to the emergency room. She was discharged from the emergency room on March 18, 2018, and was

uncertain as to whether she was going back to her daughter's house or to Perkins's apartment. Winters testified Perkins invited her to his apartment, while she was talking to him on the phone, to party with "a whole lot of people." She testified that Diana Smith ("Smith"), a mutual acquaintance of Winters and Perkins, was at Perkins's apartment at the time and helped Winters get out of the car and get into the building. Scott was also at the apartment at the time. Winters testified that Perkins was the only person who had keys to his apartment.

{¶ 6} When she entered the apartment, Winters sat down in the kitchen and Perkins began to question Winters and Smith about his suspicion that Winters engaged in oral sex with another male in the apartment two nights earlier. Winters and Smith denied the allegations. The next thing she knew, Perkins snatched the chair from underneath her, threw her onto the floor, and started hitting her, wanting to know the name of the other man. Smith helped her off the ground. Perkins then faced Smith and began to swing the chair at her. She asked Perkins if she could pass Winters her cane.[1]

{¶ 7} As Winters got to the apartment doorway, Perkins pushed her down. She testified that Perkins knocked her down and said, "naw, b****. You don't have no driving restrictions. [Your] driving restrictions been — been revoked" while ripping Winters's key out of her hand and into his hands. She then scooted into the hallway, and she and Smith ran into a neighbor's and called 911. Winters testified

---

[1] Winters testified that she uses a cane from a prior work injury.

that she had not yet retrieved her car keys. Winters further testified that her back was bruised after the incident. She did not seek medical treatment that day, but sought medical treatment at some point after the incident because "everything [was] just out of whack."

{¶ 8} Officer Fattah testified that he responded to a disturbance call on a CMHA property. He spoke with Perkins in his apartment. He testified that Perkins answered the door willingly. Perkins was a little intoxicated and sweating profusely. He asked Perkins what happened, and Perkins stated that he wanted Winters to leave because he had another female in the apartment. He also told Officer Fattah that he had been with Winters for some time and they shared a home at one point. He did not admit to any physical altercation between him and Winters other than that he pushed her out of the apartment. Officer Fattah further testified that he found marijuana in the apartment and Perkins admitted to drinking. He did not notice anyone else in the apartment at the time and stayed with Perkins the entire time while other officers spoke with Winters.

{¶ 9} Scott and Perkins testified on behalf of the defense. Perkins testified that he broke up with Winters two or three days prior to the incident and all of Winters's belongings were removed from his apartment. Perkins denied ever inviting Winters to his apartment on March 18, 2018. Perkins testified that Smith was in the apartment helping Scott move in and left a couple minutes before Winters entered his apartment. He asked Winters what she wanted and then asked her to leave three different times. He testified that Winters became angry because of

Scott's presence in the apartment and the matter turned physical when Winters struck Scott, causing her ear to bleed. Perkins got between them and ultimately "pushed her" out his apartment. Perkins was unable to call the police because his phone battery was dead. According to Perkins, the entire incident lasted approximately 10-15 minutes. Perkins testified the police only found some marijuana in the apartment. Perkins further testified the police searched his apartment and did not find Winters's keys.

{¶ 10} Scott testified that she is Perkins's girlfriend. No one else was living with Perkins when she moved into his apartment on March 18, 2018. Scott testified that Winters was upset when she arrived because Scott was there. Winters tried to get physical with Scott and then Perkins asked her to leave. Scott testified that neither she nor Perkins put their hands on Winters. Winters hit her, which caused her ear to bleed.

{¶ 11} After the conclusion of trial, the court found Perkins not guilty of unlawful restraint but guilty of assault and petty theft. Perkins was sentenced to 180 days in jail, suspending 175 days and crediting him with 5 days served, and a $150 fine. Perkins was placed on 2 years of active probation, the DIET program, and 100 hours of community service.

{¶ 12} Perkins now appeals, raising the following two assignments of error for review.

<u>Assignment of Error One</u>

**[Perkins] received ineffective assistance of counsel when trial counsel failed to file a [Crim.R. 29] motion for acquittal after the prosecution presented insufficient evidence to prove all elements of each charge.**

<u>Assignment of Error Two</u>

**The convictions were against the manifest weight of the evidence.**

<u>Ineffective Assistance of Counsel</u>

{¶ 13} In the first assignment of error, Perkins argues defense counsel was ineffective for failing to move for acquittal under Crim.R. 29 at the conclusion of the City's case and at the end of trial.

{¶ 14} In order to establish a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456. To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus; *Strickland*.

{¶ 15} In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965). In evaluating whether the defendant has been denied the effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * *

had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *State v. Calhoun,* 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905.

{¶ 16} Perkins's ineffective assistance of counsel argument stems from defense counsel's failure to move for dismissal under Crim.R. 29 at the conclusion of the City's case and at the end of trial.  Crim.R. 29(A), which governs motions for acquittal, states:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

{¶ 17}  Under Crim.R. 29(A), "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus.

{¶ 18}  Here, Perkins was convicted of petty theft under Cleveland Codified Ordinances 625.05 ("CCO 625.05"), which provides that:

**(a)** No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

**(1)** Without the consent of the owner or person authorized to give consent[.]

Perkins was also convicted of assault under Cleveland Codified Ordinances 621.03 ("CCO 621.03"), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another."

{¶ 19} In determining whether the City presented sufficient evidence establishing that Perkins assaulted Winters and kept her car keys, we recognize that: "[t]he failure of trial counsel to move for a judgment of acquittal under Crim.R. 29 does not constitute ineffective assistance of counsel when the state's case-in-chief links the defendant to the crimes of which he is accused." *State v. Vaughn*, 8th Dist. Cuyahoga No. 79948, 2002-Ohio-1415, *18, citing *State v. Small*, 10th Dist. Franklin No. 00AP-1149, 2001 Ohio App. LEXIS 1963 (May 1, 2001).

{¶ 20} Here, Winters testified that Perkins snatched the chair from underneath her, threw her onto the floor, and started hitting her. She further testified that as she got to the apartment doorway, Perkins pushed her down and ripped her car keys out of her hand. Winters testified that she has not retrieved her car keys since the incident. This evidence demonstrates that reasonable minds could have reached different conclusions as to whether the elements of assault and petty theft were proven beyond a reasonable doubt, and that a motion for acquittal would have been granted. As a result, we cannot say defense counsel's failure to move for

a judgment of acquittal under Crim.R. 29 constituted ineffective assistance of counsel.

{¶ 21} Accordingly, the first assignment of error is overruled.

### Manifest Weight of the Evidence

{¶ 22} In the second assignment of error, Perkins argues that his convictions are against the manifest weight of the evidence.

{¶ 23} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 387, 678 N.E.2d 541 (1997); *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence.

{¶ 24} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "'thirteenth juror'" and may disagree "with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered. *Id.* at 387, citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin.* We believe this is such a case.

{¶ 25} On the day of the incident, Winters testified that Perkins invited her to his apartment after she left the emergency room. Perkins denied inviting her over and did not assist Winters with access to enter his apartment building. Perkins also denied any physical altercation with Winters.

{¶ 26} Winters testified that Smith let her in and Perkins guessed that Smith must have let Winters in on her way out of the building. When Winters entered the apartment, she sat down in the kitchen and Perkins began to question Winters and Smith about his suspicion that Winters engaged in oral sex with another male in the apartment two nights earlier. Winters denied the allegations. Perkins then snatched the chair from underneath her, threw her onto the floor, and started hitting her, wanting to know the name of the other man. Smith helped her off the ground. Perkins then faced Smith and began to swing the chair at her.

{¶ 27} As Winters got to the apartment doorway with Smith's assistance, Perkins pushed her down. She testified that Perkins knocked her down and said,

"[your] driving restrictions been — been revoked[.]" Then Perkins ripped Winters's keys out of her hand. Winters testified that she has not retrieved her car keys since then. Winters further testified that her back was bruised after the incident.

{¶ 28} Based on our review of the record, weighing the strength and credibility of the evidence presented, and the inferences to be reasonably drawn therefrom, we find that the court did not lose its way when finding Perkins guilty of assault and petty theft. Indeed, the court weighed the credibility of the evidence and believed Winters. The court stated:

> I've listened attentively to * * * what's been said, and I will tell you this:
>
> I do agree that the Unlawful Restraint has not been met, so you're found not guilty on that count.
>
> However, regarding the Assault and the Petty Theft, I absolutely believe the victim, and I also believe that the statements made by the police officer and [Perkins's] witness support [Winters's] statements.
>
> There was another person there. She wouldn't have known they weren't there, if she weren't there.
>
> You want me to believe you were high and drunk and you were so calm that you peaceably asked her to leave?
>
> I just climbed up here today, and I didn't.
>
> You're found guilty on Counts 1 and 2.

{¶ 29} Therefore, the second assignment of error is overruled.

{¶ 30} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
EILEEN A. GALLAGHER, J., CONCUR